Gardner, J.:
*515 Robert Kenton Pollman Jr. appeals the sentence imposed in 2017 for his conviction of attempted possession of methamphetamine. He claims the district court erroneously classified his 2011 conviction as a person felony in computing his criminal history. But Pollman's claim is no run-of-the-mill claim of an illegal sentence. Instead, the parties agree that the crime to which Pollman pleaded and which was later classified as a prior felony for purposes of his criminal history did not exist.
We have repeatedly held that a defendant may plead to a nonexistent crime as part of a beneficial plea agreement so long as the defendant was initially brought into court on a valid pleading and voluntarily and knowingly entered into the plea agreement. That is what happened here. The question before us, which we have not previously determined, is how to classify a nonexistent crime for purposes of a defendant's criminal history score.
We reject Pollman's claim that his plea of guilty to a nonexistent offense was a nullity, finding a valid distinction between an attack on a conviction based on a nonexistent offense following a jury verdict and a nullity claim raised after a plea of guilty or no contest. Even though a jury verdict would not be sustainable, a plea presents an entirely different situation. We find Pollman's 2011 verified conviction should be scored as an omitted, unranked, or unclassified felony. The parties agree on appeal that Pollman's 2011 nonexistent offense was a nonperson offense. Because the district court scored it as a person felony instead of a nonperson felony, we vacate his sentence and remand for resentencing.
FACTUAL AND PROCEDURAL BACKGROUND
In May 27, 2011, the State charged Pollman with discharging a firearm at an occupied building or vehicle and two counts of criminal damage to property. Specifically, the complaint/information charged in Count I that on May 15, 2011, Pollman intentionally discharged a firearm at an occupied motor vehicle-a 2008 Dodge pickup, occupied by Shawnda Conner, in violation of K.S.A. 21-4219(b), a severity level 7 person felony. Count II charged Pollman with criminal damage to property of $ 1,000 to less than $ 25,000, a severity level 9 nonperson felony. Count III charged Pollman with criminal damage to Conner's property-shorts and/or suitcase, less than $ 1,000, a class B nonperson misdemeanor.
Pollman then entered a no-contest plea to discharge of a firearm at an unoccupied vehicle. K.S.A. 21-4219 prohibited criminal discharge of a firearm at an occupied building, at an unoccupied dwelling, or at an occupied vehicle and categorized all three as person felonies. That statute did not, however, prohibit criminal discharge of a firearm at an unoccupied vehicle. Pollman thus agreed to plead to a nonexistent offense.
We do not mean to suggest that Pollman's acts were lawful, as clearly they were not. Pollman's admitted act of shooting a firearm *516 at an unoccupied vehicle could constitute a number of crimes, depending on facts not shown by our limited record. See, e.g., K.S.A. 2010 Supp. 21-4217(a)(1) (prohibiting discharge of any firearm on any land of another without permission); K.S.A. 2010 Supp. 21-4217(a)(2) (prohibiting discharge of any firearm upon or from any public road or right-of-way that adjoins land of another without permission). If nothing else, it constituted criminal damage to property. K.S.A. 21-3720 (prohibiting damaging another's property without consent).
Not surprisingly, no transcript of the 2011 plea hearing is included in the record on appeal from Pollman's 2017 conviction. As a result, we have no facts to show why the parties agreed to a plea to the amended charge of discharge of a firearm at an unoccupied vehicle. The parties could have erroneously believed that K.S.A. 21-4219 prohibited criminal discharge of a firearm at an unoccupied vehicle. That statute did, after all, prohibit criminal discharge of a firearm at an occupied building, at an unoccupied dwelling, and at an occupied vehicle. It seems more reasonable to believe that the parties made an error of law than that they intentionally agreed to fabricate a nonexistent crime out of whole cloth for Pollman's benefit. Why the parties agreed to this plea cannot now be determined. Either way, Pollman and the State agreed he would plead to a crime that did not exist.
Pursuant to the plea, the State dismissed the two counts of criminal damage to property. The district court categorized Pollman's nonexistent offense as a severity level 8 person felony and ordered Pollman to pay restitution in the amount of $ 4,278.72. The district court sentenced Pollman to 10 months in the custody of the Department of Corrections but granted him probation for 18 months for discharge of a firearm at an unoccupied vehicle. As far as we know, Pollman made no attempt to challenge his 2011 conviction until late in his current appeal arising from his 2017 sentence.
After a traffic stop on January 29, 2017, the State charged Pollman with possession of methamphetamine and driving on a suspended license. He eventually pleaded to attempted possession of methamphetamine. At his sentencing hearing the district court classified Pollman's criminal history score as a C, without objection, based partly on the nonexistent 2011 offense which the district court scored as a person felony. The court imposed a prison sentence of 24 months with 12 months of postrelease supervision for his 2017 crime.
Pollman appealed from his 2017 sentencing, contending that, for purposes of calculating his criminal history score in this case, the district court should have classified his nonexistent 2011 offense as a nonperson misdemeanor rather than as a person felony. His sole request was that the court vacate his sentence and remand for resentencing pursuant to the correct criminal history score of F. He argued that either by using the rule of lenity or by treating his 2011 conviction as an "unclassified crime," we should score his 2011 conviction as a nonperson misdemeanor.
During oral arguments, this court raised an issue the parties had not raised, questioning the validity of the 2011 conviction. The court permitted the parties to address that issue in supplemental briefs and they did so. Pollman then echoed the dissent's position that because his 2011 conviction was for a noncriminal act it was invalid or void for purposes of his criminal history.
Preservation
Pollman concedes that he did not raise any issue regarding his sentence in the district court, but he contends that it is properly considered by this court as an illegal sentence under K.S.A. 22-3504. An illegal sentence may be corrected at any time, even for the first time on appeal. State v. McLinn , 307 Kan. 307, 349, 409 P.3d 1 (2018). Kansas appellate courts have previously considered legal challenges to criminal history scores, like Pollman's, for the first time on appeal as challenges to the legality of the sentences. See State v. Sturgis , 307 Kan. 565, 572, 412 P.3d 997 (2018) ; State v. Campbell , 307 Kan. 130, 133, 407 P.3d 240 (2017). We do the same.
*517 SHOULD POLLMAN'S 2011 CONVICTION FOR A NONEXISTENT OFFENSE BE USED IN HIS CRIMINAL HISTORY SCORE ?
We first examine whether Pollman's 2011 conviction for the nonexistent offense of discharging a firearm at an unoccupied vehicle should be used in his criminal history score. This requires us to examine Pollman's argument that his conviction is invalid because it was based on a nonexistent or hypothetical crime.
A. Pollman's 2011 conviction for a nonexistent offense was a conviction.
Pollman initially stated that he was not challenging his underlying 2011 conviction. Instead, his brief recognized that his 2011 conviction was likely valid even though K.S.A. 21-4219 did not prohibit discharging a firearm at an unoccupied vehicle:
"Nonetheless, the conviction is likely valid, and certainly not challenged here. Indeed, a defendant is permitted to plead to a nonexistent crime or hypothetical crime as part of a plea agreement, so long as the defendant [meets the three conditions stated in] McPherson v. State , 38 Kan. App. 2d 276, 285, 163 P.3d 1257 (2007)."
Pollman changed his position in his supplemental brief, contending that his 2011 conviction was invalid because it was based on a nonexistent or hypothetical crime so it could not be counted in his criminal history. But Pollman cannot use this appeal which solely challenges his 2017 sentencing to attack his 2011 conviction, as Pollman now invites us to do. " K.S.A. 22-3504 is not a vehicle for a collateral attack on a conviction." State v. Williams , 283 Kan. 492, 495-96, 153 P.3d 520 (2007) (citing State v. Nash , 281 Kan. 600, Syl. ¶ 2, 133 P.3d 836 [ (2006) ] ). Our Supreme Court "has repeatedly stated that the relief available under K.S.A. 22-3504 is correction of a sentence, not reversal of a conviction." State v. Trotter , 296 Kan. 898, 902, 295 P.3d 1039 (2013). The same is true here.
B. Pollman forfeited his right to attack the underlying infirmity in the charge to which he pleaded no contest.
But even if Pollman's challenge here were distinctively different than the typical K.S.A. 22-3504 motion, Pollman has forfeited his right to attack the underlying infirmity in the charge to which he pleaded no contest. Pollman cannot consider his 2011 conviction to be valid for all purposes but his criminal history. The fact of his 2011 conviction has been established and cannot be collaterally attacked now, as the following cases establish.
Kansas cases
This issue has been addressed in a related context several times. The procedural posture of these cases differs from Pollman's but not significantly so. In Spencer v. State , 24 Kan. App. 2d 125, 126, 942 P.2d 646 (1997), aff'd on other grounds 264 Kan. 4, 954 P.2d 1088 (1998), we found, when reviewing the dismissal of a K.S.A. 60-1507 motion, that attempted aggravated assault was not a crime. Then, as now, our statutes provided that a crime was an act or omission defined by law and that no conduct constitutes a crime in Kansas unless it is made criminal by statute. K.S.A. 21-3102 ; K.S.A. 21-3105. Yet we held that a defendant may plead to a nonexistent crime as part of a plea agreement so long as the defendant (1) was initially brought into court on a valid pleading; (2) received a beneficial plea agreement; and (3) voluntarily and knowingly entered into the plea agreement. Spencer , 24 Kan. App. 2d at 129, 942 P.2d 646. We reached the conclusion that one could validly plead to a crime that "may not be logically or technically consistent" but which could be upheld, "because the defendant received the benefit of a bargain into which he freely entered." 24 Kan. App. 2d at 128-29, 942 P.2d 646. We further held that "if a defendant enters into a plea agreement voluntarily and intelligently, he or she forfeits the right to attack the underlying infirmity in the charge to which he or she pled." 24 Kan. App. 2d at 129, 942 P.2d 646. Our Supreme Court, on review, held that attempted aggravated assault was, in fact, a crime, so Spencer had not pleaded to a nonexistent crime. 264 Kan. at 5-6, 8, 954 P.2d 1088. It thus did not reach the Court of Appeals' analysis.
In Easterwood v. State , 273 Kan. 361, 44 P.3d 1209, cert. denied *518 537 U.S. 951, 123 S.Ct. 416, 154 L.Ed.2d 297 (2002), the movant filed a K.S.A. 60-1507 motion arguing that his conviction should be overturned due to a then recent change in the felony-murder rule. But our Supreme Court held that Easterwood had knowingly waived his right to challenge his conviction at trial or through a direct appeal and pled guilty to obtain a favorable plea agreement, so he could not collaterally attack his conviction. 273 Kan. 361 -62, 44 P.3d 1209. Our Supreme Court acknowledged the Court of Appeals' holding in Spencer that a defendant could plead guilty to a nonexistent crime, yet it did not reject or disapprove of that analysis. 273 Kan. at 382, 44 P.3d 1209. Instead, the Easterwood court focused on the effect of a plea. It affirmed Easterwood's convictions and refused to allow him to challenge a voluntary and knowing plea based on a later favorable ruling, concluding that Easterwood had invited the error to receive a favorable plea bargain. 273 Kan. at 383, 44 P.3d 1209.
The Kansas Supreme Court then denied review on two other Kansas Court of Appeals cases that cited Spencer favorably for the proposition that a defendant may plead to a nonexistent crime. State v. Luthi , No. 91,409, 2004 WL 2927742, at *6 (Kan. App. 2004) (unpublished opinion) (motion to withdraw a plea), rev. denied 279 Kan. 1009 (2005); Mills v. State , No. 89,012, 2003 WL 22387749, at *1 (Kan. App. 2003) (unpublished opinion) ( K.S.A. 60-1507 motion), rev. denied 277 Kan. 924 (2004). Luthi also relied on Spencer 's holding that the defendant " 'forfeits the right to attack the underlying infirmity in the charge to which he or she pled.' " 2004 WL 2927742, at *6.
Then came McPherson v. State , 38 Kan. App. 2d 276, 163 P.3d 1257 (2007). McPherson had entered a plea bargain and pleaded no contest to one count of attempted second-degree unintentional murder-a crime that did not exist. McPherson filed a K.S.A. 60-1507 motion seeking to reverse his convictions arguing that his due process rights were violated by his conviction and sentence for a nonexistent crime. The district court denied McPherson's motion, holding that because McPherson was originally charged with a valid crime and benefitted from a favorable plea agreement, his plea was acceptable. The district court also concluded that McPherson forfeited any challenges to the infirmity of the crime by entering a knowing and voluntary plea.
On appeal, we reaffirmed Spencer , 24 Kan. App. 2d at 129, 942 P.2d 646, holding:
"A defendant is permitted to plead to a nonexistent or hypothetical crime as part of a plea agreement so long as the defendant (1) was initially brought into court on a valid pleading; (2) received a beneficial plea agreement; and (3) voluntarily and knowingly entered into the plea agreement." McPherson , 38 Kan. App. 2d 276, Syl. ¶ 2, 163 P.3d 1257.
We found those three conditions to be met and concluded: "[I]f a defendant enters into a beneficial plea agreement voluntarily and intelligently, he or she forfeits the right to attack any underlying infirmity in the charge to which he or she pled." 38 Kan. App. 2d at 284-85, 163 P.3d 1257. The Kansas Supreme Court did not review McPherson .
We find McPherson to be well-reasoned and persuasive:
"Although the practice of permitting plea agreements such as this one to stand may seem illogical at first glance, such agreements serve a legitimate purpose. Compromises have long been permitted by our courts. Criminal cases are resolved by plea bargains virtually every day. As long as due process requirements are met and the bargain is beneficial to the defendant that defendant cannot later validly collaterally attack either the plea or bargained-for sentence. To paraphrase the Spencer court, if a defendant enters into a beneficial plea agreement voluntarily and intelligently, he or she forfeits the right to attack the underlying infirmity in the charge to which he or she pled. 24 Kan. App. 2d at 129 [942 P.2d 646]." 38 Kan. App. 2d at 285, 163 P.3d 1257.
Similarly, in State v. Flores , 292 Kan. 257, 258-60, 252 P.3d 570 (2011), our Supreme Court upheld the denial of a motion to withdraw a plea where Flores conceded he received a " 'beneficial plea agreement' " but nevertheless contended he pled to a nonexistent *519 crime because the statutes did not include attempted voluntary manslaughter as an inherently dangerous felony. The State relied on Spencer , Easterwood , and McPherson . But once again, our Supreme Court found that the charge to which Flores ultimately pled-felony murder with an underlying felony of attempted voluntary manslaughter-was a crime. It did not reach our court's Spencer analysis. Flores , 292 Kan. at 260-61, 252 P.3d 570.
We recently applied McPherson in State v. Moral , No. 111,426, 2016 WL 463399, at *6 (Kan. App. 2016) (unpublished opinion), rev. denied 306 Kan. 1327 (2017). There, we found the district court properly accepted a factual basis for Moral's misdemeanor plea, even though it was inconsistent with the crime charged. "Because Moral accepted the benefit of his plea agreement knowingly and voluntarily, he cannot attack the factual basis for his conviction and sentence on appeal." 2016 WL 463399, at *7.
The above cases illustrate that we have repeatedly applied our court's Spencer analysis and that our Supreme Court has had several opportunities to disapprove Spencer 's analysis, yet it has never done so. We believe Spencer 's analysis is sound. The rationale in these cases may be based partly on an unspoken application of a species of judicial estoppel where a litigant cannot induce the court to take a position at one stage of the litigation when that position is beneficial to the litigant and then later invite the court to take an opposite position to obtain a different benefit or avoid a detriment. Or the cases may be based on a contractual benefit-of-the-bargain rationale which binds a defendant not only to the benefits of his or her plea bargain but also to its ensuing detriments. Whatever the rationale, our cases teach that Pollman could plead to a nonexistent crime as part of a plea agreement as long as he was initially brought into court on a valid pleading, received a beneficial plea agreement, and voluntarily and knowingly entered into the plea agreement. If those conditions are met, Pollman forfeited the right to attack the underlying infirmity in the charge to which he pleaded.
Other jurisdictions
Kansas is not an outlier in finding that a defendant can plead to a nonexistent crime and that by doing so the defendant forfeits any challenges to the infirmity of the crime. Guilty pleas to defective or nonexistent offenses have often been upheld where the defendant has entered the plea under a plea bargain agreement from which he received a substantial benefit, even though a jury conviction on the same charge could not stand. See, e.g., People v. Myrieckes , 315 Ill. App. 3d 478, 485, 248 Ill.Dec. 480, 734 N.E.2d 188 (2000) (holding it is not unlawful for the State and a defendant to enter into a guilty plea for a nonexistent crime so long as the defendant receives a benefit); People v. Genes , 58 Mich. App. 108, 109-12, 227 N.W.2d 241 (1975) (holding a defendant, charged with second-degree murder, who had entered a guilty plea to attempted manslaughter to "the benefit of his bargain" despite an assertion that "there [was] no such crime as attempted manslaughter"); People v. Guishard , 15 A.D.3d 731, 732, 789 N.Y.S.2d 332 (N.Y. App. Div. 2005) (affirming plea conviction to attempted assault in the first degree although the crime was a "legal impossibility"); People v. Barker , 221 A.D.2d 1018, 635 N.Y.S.2d 383 (N.Y. App. Div. 1995) (affirming plea conviction to the "nonexistent crime" of attempted first-degree manslaughter, but noting that "a jury verdict convicting a person of that crime would be invalid").
The rationale used to sustain a guilty plea to a nonexistent offense is that the defendant receives the benefit of his bargain, as does the State. Such pleas are sustained because they are freely sought by a defendant and freely taken as part of a bargain which was struck for the defendant's benefit: "While there may be question whether a plea to attempted manslaughter is technically and logically consistent, such a plea should be sustained on the ground that it was sought by defendant and freely taken as part of a bargain which was struck for the defendant's benefit." People v. Foster , 19 N.Y.2d 150, 154, 278 N.Y.S.2d 603, 225 N.E.2d 200 (1967). "These courts recognize that it is often in the interest of defendants to 'plead to a nonexistent crime in satisfaction of an indictment *520 charging a crime with a heavier penalty' and thereby avoid risking a conviction for the more serious crime even though a jury could not convict a defendant of a legally impossible crime. People v. Martinez , 81 N.Y.2d 810, 812, 595 N.Y.S.2d 376, 611 N.E.2d 277 (1993)." Dale v. Holder , 610 F.3d 294, 302-03 (5th Cir. 2010) (reviewing New York nonexistent crime cases).
Other kinds of nonexistent crimes
The issue of nonexistent crimes typically arises when a defendant is charged with an unintentional crime, such as involuntary manslaughter, then pleads to an attempted crime, thus requiring an intent to do an unintentional act. Those factual situations are legally impossible or logically inconsistent. But cases do not limit the application of the rule to attempted crimes or to certain kinds of nonexistent crimes. Instead, judgment entered on the plea in such situations may be based upon no objective state of facts, on a hypothetical crime, or on a hypothetical situation without objective basis:
"The judgment entered on the plea in such situations may be based upon no objective state of facts. It is often a hypothetical crime, and the procedure-authorized by statute-is justified for the reason that it is in substitution for a charge of crime of a more serious nature which has been charged but perhaps cannot be proved.... [H]is plea may relate to a hypothetical situation without objective basis ...." People v. Griffin , 7 N.Y.2d 511, 516, 199 N.Y.S.2d 674, 166 N.E.2d 684 (1960).
Pollman's 2011 offense was a nonexistent or hypothetical crime.
Whether the offense to which Pollman pleaded was nonexistent because it was a legal impossibility, a logical impossibility, or a factual impossibility matters not. See Spencer , 24 Kan. App. 2d at 127, 942 P.2d 646 (" '[H]is plea may relate to a hypothetical situation without objective basis. ' 19 N.Y.2d at 154, 278 N.Y.S.2d 603, 225 N.E.2d 200"); People v. Castro , 44 A.D.2d 808, 808, 356 N.Y.S.2d 49 (N.Y. App. Div. 1974) ("[A] defendant may plead to a crime which does not even exist and the plea is valid. Such a hypothetical crime has no elements, yet their absence does not affect the plea. [Citation omitted.]"), aff'd 37 N.Y.2d 818, 376 N.Y.S.2d 922, 339 N.E.2d 620 (1975).
Crimes such as attempted involuntary manslaughter are logically inconsistent. But they are legally impossible only because, as defined by the Legislature, one cannot attempt to commit an unintentional crime. Pollman's crime of discharging a firearm at an unoccupied vehicle, although logically consistent and factually possible, was a legal impossibility for the same reason-it did not fall within the crime as defined by the Legislature.
The law tolerates a number of legal fictions in the context of pleas. See, e.g., North Carolina v. Alford , 400 U.S. 25, 37-38, 91 S. Ct. 160, 27 L.Ed. 2d 162 (1970) (permitting a defendant to avoid the probability of a more severe sentence by pleading guilty to a crime for which the defendant claims to be innocent); Moral , 2016 WL 463399, at *7 (finding the district court properly accepted a factual basis for the plea, even though it was inconsistent with the crime charged); State v. Robinson , No. 90411, 2008-Ohio-3972, 2008 WL 3136602 (Ohio Ct. App. 2008) (noting manslaughter is not a lesser included offense of murder, but " '[i]t is, nevertheless, routinely used as a legal fiction for purposes of facilitating plea agreements.' ") Permitting a defendant to plead to a nonexistent crime in certain circumstances is a similar legal fiction. Although we heartily encourage parties to plead to a lesser offense rather than to a nonexistent offense, we find no legal impediment to counting a conviction of a nonexistent offense in a defendant's criminal history if Spencer 's three requirements are met.
C. We apply the Spencer factors.
Spencer teaches that a defendant may plead to a nonexistent crime as part of a plea agreement so long as the defendant (1) was initially brought into court on a valid pleading; (2) received a beneficial plea agreement; and (3) voluntarily and knowingly entered into the plea agreement. 24 Kan. App. 2d at 129, 942 P.2d 646. These elements are met here.
*521 1. Pollman pleaded to a nonexistent crime as part of a plea agreement.
Pollman pleaded to a nonexistent crime as part of his plea agreement. This is established by the simple, uncontested fact that the Kansas Legislature has not defined as a crime the acts to which Pollman pleaded-discharging a firearm at an unoccupied vehicle. The offense to which Pollman pleaded is, in common parlance, a "nonexistent or hypothetical crime." But the terms are broad and their meaning is plain in encompassing all offenses not defined as a crime by the Legislature.
2. Pollman was initially brought into court on a valid pleading .
Pollman does not allege that the complaint/information which originally charged him with crimes was invalid. Nonetheless, Pollman contends in his supplemental brief that the district court lacked jurisdiction to convict him of a nonexistent crime.
The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time. State v. Dunn , 304 Kan. 773, 784, 375 P.3d 332 (2016). So we consider this argument raised for the first time on appeal. A conviction obtained in a court without subject matter jurisdiction is void. 304 Kan. at 784, 375 P.3d 332. But Pollman does not want us to find his conviction void-instead he wants to retain the benefit of his bargain and asks us to consider his conviction invalid only for criminal history purposes.
For many years, our cases held that jurisdiction is acquired in a criminal case upon the filing of a complaint, indictment, or information. See State v. Brown , 280 Kan. 898, 901, 127 P.3d 257 (2006). In 2011, when Pollman was convicted of the nonexistent offense, we used an elements test:
" 'As long as the complaint, indictment, or information alleges the elements of the offense intended to be charged, sufficiently apprises the defendant of the facts he or she must be prepared to meet, and is specific enough to determine a subsequent plea of double jeopardy, the district court has subject matter jurisdiction. State v. Sims , 254 Kan. 1, 9, 862 P.2d 359 (1993).' 280 Kan. at 901 [127 P.3d 257]." State v. Edwards , 281 Kan. 1334, 1338, 135 P.3d 1251 (2006).
But in 2016, the Kansas Supreme Court corrected that error, finding the Kansas Constitution is the source of a court's subject matter jurisdiction. Dunn , 304 Kan. at 811, 375 P.3d 332. Thus, the charging document does not establish subject matter jurisdiction for the court to hear a criminal charge-it merely invokes that jurisdiction. The charging document does not need to include all the essential elements of a charged offense and is now deemed sufficient if it alleges facts which, if proven beyond a reasonable doubt, show the defendant has committed a crime in Kansas. 304 Kan. at 811, 375 P.3d 332.
Pollman appeared in the district court in 2011 to respond to three charges stated in his complaint/information: intentionally discharging a firearm at an occupied motor vehicle in violation of K.S.A. 21-4219(b) ; felony criminal damage to property $ 1,000 to less than $ 25,000; and misdemeanor criminal damage to property. Each count alleged a crime in Kansas, under either an elements test or a facts test. By filing this complaint/information in 2011, the State properly invoked the jurisdiction of the district court. Pollman did not then, nor does he now, question the jurisdiction of the district court over any charge in the complaint. He questions only the jurisdiction over the nonexistent offense to which he subsequently pleaded.
But when Pollman struck his plea bargain with the State, he did so knowing of all the crimes charged. These charges, over which the district court clearly had jurisdiction and which were unquestionably viable under the Kansas Criminal Code, were as much a part of the plea negotiations as was the offense to which Pollman actually pleaded. Moreover, as a result of the plea entered by Pollman, the State dismissed the remaining charges. So "the focus of the [district] [c]ourt's jurisdiction here cannot be limited to the validity of the [nonexistent] charge but must include the adjudication through the plea bargaining process of all charges pending against the defendant."
*522 Downer v. State , 543 A.2d 309, 312 (Del. 1988). Pollman has shown no authority for his argument that the district court somehow had jurisdiction to take his plea, dismiss the valid charges, and sentence him, yet it simultaneously lacked jurisdiction to convict him of the nonexistent offense to which he agreed.
Pollman cites Dunn , 304 Kan. at 787, 375 P.3d 332, for its reliance on United States v. Peter , 310 F.3d 709, 714-15 (11th Cir. 2002). Peter held that where an indictment failed to allege conduct that would constitute a federal crime, the district court lacked jurisdiction to accept the resulting plea. But Peter applied "the rule of Meacham , that a district court lacks jurisdiction when an indictment alleges only a non-offense." ( Emphasis added.) 310 F.3d at 715 ; see United States v. St. Hubert , 909 F.3d 335, 343 (11th Cir. 2018) (stating the Peter court decided that when an indictment alleges only a nonoffense "the district court has no jurisdiction to accept the guilty plea"). In contrast, Pollman's charging document did not allege only nonoffenses.
Dunn said nothing different:
" '[T]here is no jurisdictional defect when the "indictment fail[s] to allege an element of the charged offense," but there is one when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute.' [United States v. Brown ,] 752 F.3d [1344] 1352 [ (2014) ] (quoting Peter , 310 F.3d at 714 )." 304 Kan. at 787, 375 P.3d 332.
We agree. As Dunn confirms, had the State initially presented the district court with a complaint/information that did not charge any crime, the charging document would not have invoked the district court's jurisdiction. See K.S.A. 2010 Supp. 22-3502 (arrest of judgment available if charging document does not charge crime or court without jurisdiction); Spencer , 24 Kan. App. 2d at 128-29, 942 P.2d 646. But that is not what happened here. Pollman's 2011 charging document did not allege any nonoffense but instead alleged only crimes defined by the Kansas Legislature.
No jurisdictional problem is created when, as here, the charging document alleges conduct that constitutes a crime, then the defendant later chooses to beneficially plea to a nonexistent offense. Spencer , 24 Kan. App. 2d at 129, 942 P.2d 646 (finding district court had jurisdiction to accept Spencer's guilty plea to a nonexistent crime because Spencer was originally charged with a valid crime). "[T]he court's jurisdiction is not lost simply because the result of the bargaining is a plea to a nonexistent offense." Downer , 543 A.2d at 312. The fundamental authority of the court to accept the result of Pollman's bargain with the State remained intact.
Because the State was not legally precluded from obtaining a valid conviction based on one of the originally charged offenses, the district court had jurisdiction over all charges pending against Pollman, including the related charges disposed of through his guilty plea.
3. Pollman received a beneficial plea agreement.
Pollman does not contend that his plea agreement was not beneficial. In fact, he appears to recognize the benefit of his bargain, as he has not moved to withdraw his plea or reverse his conviction. At the time of the plea, Pollman was charged with one count of intentionally discharging a firearm at an occupied motor vehicle, in violation of K.S.A. 21-4219(b), a severity level 7 person felony; one count of criminal damage to property of $ 1,000 to less than $ 25,000, a severity level 9 nonperson felony; and one count of criminal damage to property less than $ 1,000, a class B nonperson misdemeanor. By Pollman's plea, the district court classified the reduced charge of discharging a firearm at an unoccupied vehicle as a severity level 8 felony. It removed the State's opportunity to prove a level 7 felony and dismissed the severity level 9 felony and the class B misdemeanor. By taking the plea to the nonexistent offense, Pollman reduced his sentence to 10 months. The record confirms that Pollman received a beneficial plea agreement.
4. Pollman voluntarily and knowingly entered into the plea agreement.
Pollman does not challenge the knowing and voluntary nature of his plea.
*523 Although the record contains no transcript from the 2011 plea hearing, it does include the journal entry of the arraignment/plea hearing, which includes a summary of the parties' agreement. That summary evidences a thorough colloquy between the court and Pollman about Pollman's rights, what he understood, and what he was waiving-this complied with procedural due process. See State v. Moody, 282 Kan. 181, 194, 144 P.3d 612 (2006) (noting K.S.A. 2005 Supp. 22-3210 embodies due process requirements articulated in Boykin v. Alabama , 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed. 2d 274 [ (1969) ] ).
The journal entry of the plea hearing strongly implies that Pollman was informed that the amended charge constituted a severity level 8 felony. The journal entry indicates that Pollman was advised of the charges and possible penalties. He was advised of the right to a preliminary examination hearing and that the purpose of such hearing was to determine whether a felony had been committed and whether there was probable cause to believe he committed the felony. Pollman was given a copy of the amended complaint, which presumably designated the amended charge as a severity level 8 person felony.
Before accepting the plea, the district court informed Pollman of his rights, including his rights to a jury trial; to have an attorney represent him at every stage of the proceeding; to confront and cross-examine the State's witnesses; to present witnesses of his own and compel their attendance if necessary; to testify if he desired; and to expect that the State will have to carry its burden of proof beyond a reasonable doubt. Pollman indicated that he understood those rights and had consulted with his attorney about them.
The district court then questioned the defendant about his plea. Pollman stated that he understood the terms of the bargain; had adequate time to discuss the bargain with his attorney and any questions had been answered; had in no way been forced, coerced, or threatened to take the bargain; saw benefit from the bargain; understood that he was giving up his right to trial and most of the rights of appeal; understood that the court was not bound by the bargain or recommendations as to sentencing, leniency, probation, or parole; and had not been promised that the court would be lenient or grant probation or parole. The district court then found that the plea bargain was knowingly and voluntarily entered into by the defendant. The record thus confirms that Pollman's plea was knowing and voluntary.
Pollman is permitted to plead to a nonexistent crime as part of a plea agreement because he was initially brought into court on a valid pleading, he received a beneficial plea agreement, and he voluntarily and knowingly entered into the plea agreement. See Spencer , 24 Kan. App. 2d at 129, 942 P.2d 646. Because Pollman entered into a beneficial plea agreement voluntarily and intelligently, he forfeited the right to collaterally attack any underlying infirmity in the charge to which he pled. See McPherson , 38 Kan. App. 2d 276, Syl. ¶ 3, 163 P.3d 1257. His conviction for discharging a firearm at an unoccupied vehicle stands.
WAS POLLMAN'S NONEXISTENT OFFENSE PROPERLY SCORED FOR PURPOSES OF CRIMINAL HISTORY ?
We next determine how to score a nonexistent offense for purposes of criminal history. We look to the Kansas sentencing guidelines.
Pollman argues that the sentence for his 2017 conviction failed to conform to statute, specifically in the classification of his criminal history.
The legality of a sentence under the Kansas Sentencing Guidelines Act involves statutory interpretation, which constitutes a question of law subject to plenary appellate review. See State v. Clapp , 308 Kan. 976, 980, 425 P.3d 605 (2018) ; State v. Redick , 307 Kan. 797, 807, 414 P.3d 1207 (2018). A felony sentence under the Kansas Sentencing Guidelines Act is calculated by properly classifying the severity level of the crime and the defendant's criminal history score. State v. Lee , 306 Kan. 624, 625, 395 P.3d 418 (2017).
A. The general rule requires all convictions to be counted.
We begin with the general rule, set forth in K.S.A. 2016 Supp. 21-6810(c), that "[e]xcept *524 as otherwise provided, all convictions, whether sentenced consecutively or concurrently, shall be counted separately in the offender's criminal history." As the above discussion concludes, Pollman's 2011 conviction should be counted in his criminal history.
B. Pollman's 2011 conviction is not among the exclusive statutory exceptions.
The statute lists in K.S.A. 2016 Supp. 21-6810(d) the possible exceptions to the general rule that all convictions count. For example, subsection (d)(8) provides that convictions under a statute later deemed to be unconstitutional are not scored in criminal history; subsection (d)(9) provides that convictions under a subsequently repealed statute are scored in criminal history. None of the exceptions provided in K.S.A. 2016 Supp. 21-6810(d) excludes a nonexistent crime from calculation in an offender's criminal history, or otherwise excludes Pollman's 2011 conviction. The statute underscores the general rule by reciting it again after the possible list of exclusions, stating "[e]xcept as otherwise provided, all other prior convictions will be considered and scored." K.S.A. 2016 Supp. 21-6810(d)(9). The Legislature's intent could not be clearer. These statutory exceptions are exclusive. The KSGA requires us to count in one's criminal history any conviction not excepted by statute. Pollman's conviction was not excepted by statute, so it must be counted.
1. Pollman's 2011 conviction was a verified conviction.
K.S.A. 2016 Supp. 21-6810(d)(1) states: "Only verified convictions will be considered and scored." If a conviction is verified and is not excluded by exceptions to the general rule, we must count it in a defendant's criminal history. Conversely, if a conviction is not verified, it cannot be counted. This statute reflects legislative intent that we do not look beyond the fact of verification when determining the validity of a conviction for purposes of criminal history. That rule has much to commend it.
A verified conviction is a conviction reflected in a journal entry or similar official court documents. See K.S.A. 2016 Supp. 21-6813(b)(5) (stating that convictions may be verified through "journal entries or other documents"); State v. Schow , 287 Kan. 529, 536, 197 P.3d 825 (2008) ; United States v. Allen , No. 99-4024, 1999 WL 672312 (10th Cir. 1999) (unpublished opinion) (finding the district court erred by relying on the presentence report's listing of an unverified conviction which stated that " 'court and police information have been requested but not received' "); cf. State v. Prater , 31 Kan. App. 2d 388, 392-94, 65 P.3d 1048 (2003) (finding the district court properly included attempted aggravated arson in Prater's criminal history score even though he had not yet been formally convicted of that charge by the district court after remand by the Kansas Court of Appeals, because the appellate court's mandate ordering the district court to enter a conviction of that crime had the effect of a verified conviction).
Pollman's 2011 conviction for discharge of a firearm at an unoccupied vehicle is reflected in his 2011 journal entry, which also reflects the dismissal of two counts of criminal damage to property. The district court categorized Pollman's criminal discharge offense as a severity level 8 person felony, ordered restitution in the amount of $ 4,278.72, and imposed a 10-month sentence for Pollman's agreed offense. Because his conviction for the nonexistent offense is included in the journal entry, it is a verified conviction. Verified convictions are to be considered and scored. See K.S.A. 2016 Supp. 21-6810(d)(1). This subsection, independently of Spencer and its line of cases, requires us to count Pollman's conviction in his criminal history.
2. Pollman's 2011 conviction was an unclassified felony.
In Kansas, crimes are designated felony or misdemeanor (or traffic or cigarette or tobacco infractions) and person or nonperson by the state Legislature. See K.S.A. 2016 Supp. 21-5102. By the nature of the penalty imposed, the nonexistent offense to which Pollman pleaded in 2011 was a felony and should be classified as such for criminal history purposes.
*525 "(a) A felony is a crime punishable by death or by imprisonment in any state correctional institution or a crime which is defined as a felony by law.
....
"(d) All other crimes are misdemeanors." K.S.A. 2016 Supp. 21-5102.
The district court imposed an underlying sentence on Pollman for discharge of a firearm at an unoccupied vehicle of 10 months in the custody of the Kansas Department of Corrections. Even though the offense was not classified by statute, the nature of its punishment, which Pollman does not challenge, classified it as a felony.
The relevant statute requires courts to consider and score unclassified felonies as nonperson crimes. K.S.A. 2016 Supp. 21-6810(d)(6) states: "Unless otherwise provided by law, unclassified felonies and misdemeanors, shall be considered and scored as nonperson crimes for the purpose of determining criminal history." Pollman's conviction was unclassified so it should have been scored as a nonperson crime.
Consistent with K.S.A. 2016 Supp. 21-6810(d)'s statutory mandate, K.S.A. 2016 Supp. 21-6807(c) provides the following rules for determining the crime severity of specified offenses.
"(c) The provisions of this subsection shall be applicable with regard to ranking offenses according to the crime severity scale as provided in this section:
"(1) When considering an unranked offense in relation to the crime severity scale, the sentencing judge should refer to comparable offenses on the crime severity scale.
"(2) Except for off-grid felony crimes, which are classified as person felonies, all felony crimes omitted from the crime severity scale shall be considered nonperson felonies.
"(3) All unclassified felonies shall be scored as level 10 nonperson crimes." K.S.A. 2016 Supp. 21-6807(c).
The legal distinction between an "unranked" felony and an "unclassified" felony is not readily apparent in the statute, and the terms have not been defined by statute or caselaw. But for purposes of this appeal, it is unnecessary to determine whether Pollman's conviction was also "omitted" or "unranked" because application of any one of the three rules in K.S.A. 2016 Supp. 21-6807(c)(1), (2), or (3) results in the same criminal history rating for Pollman's 2011 conviction. We examine these below.
Under K.S.A. 2016 Supp. 21-6807(c)(1), a sentencing judge considering an unranked offense in relation to the crime severity scale, "should refer to comparable offenses on the crime severity scale." If we consider Pollman's 2011 offense to be an "unranked offense," as it appears to be, his offense of discharging a firearm at an unoccupied vehicle is comparable to criminal damage to property. Criminal damage to property in the amount of $ 1,000 to less than $ 25,000 was a severity level 9 nonperson felony at the time Pollman committed the offense. K.S.A. 21-3720(b)(2). Pollman was charged restitution in the amount of $ 4,278.72. Five-hundred dollars of that restitution is payable to a person listed as the victim of one of the dismissed criminal damage to property charges. The remaining $ 3,778.72 then necessarily pertains to the offense of conviction. Thus under K.S.A. 2016 Supp. 21-6807(c)(1), Pollman's 2011 conviction should be classified as a nonperson felony for criminal history purposes.
Under K.S.A. 2016 Supp. 21-6807(c)(2), Pollman's 2011 offense was a "felony crime[ ] omitted from the crime severity scale" so it "shall be considered [a] nonperson felon[y]." Similarly, under subsection (c)(3), Pollman's 2011 offense would be classified as a nonperson felony because "[a]ll unclassified felonies shall be scored as level 10 nonperson crimes." K.S.A. 2016 Supp. 21-6807(c)(3). Pollman's brief admits that his 2011 offense is "unclassified" and defines that term as " 'not placed or belonging in a class' " (quoting Webster's New Collegiate Dictionary 1263). Pollman states "[b]y its plain language then, an unclassified crime would be any crime not otherwise placed within a class. Because [ ] Pollman's prior conviction was for a nonexistent crime, which had no classification, it is unclassified." We agree.
*526 Consequently, the district court erroneously classified Pollman's 2011 conviction as a person felony in determining his criminal history score in the present case. When the 2011 conviction is properly classified as a nonperson felony, Pollman's criminal history score should have been determined to be an E.
C. The rule of lenity does not apply.
Pollman's only other argument is that the rule of lenity applies. That rule requires a court to apply a reasonable reading of a statute in favor of a criminal defendant when the applicable language of a statute or statutes fosters a genuine ambiguity. State v. Coman , 294 Kan. 84, Syl. ¶ 5, 273 P.3d 701 (2012) ("Under the rule of lenity, criminal statutes must be strictly construed in favor of the defendant."); State v. Thompson , 287 Kan. 238, 249, 200 P.3d 22 (2009) (statutory silence or ambiguity construed in favor of defendant). Although the Legislature had not classified the offense for which Pollman was convicted in 2011, the criminal code is not silent or ambiguous as to classification of that offense. It instead guides us on how to classify unclassified, omitted, or unranked convictions, such as Pollman's. As a result, the rule of lenity does not apply.
CONCLUSION
Pollman's 2011 offense must be scored as a nonperson felony rather than as a person felony. We vacate Pollman's sentence and remand for resentencing.