NOT DESIGNATED FOR PUBLICATION

No. 126,857

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

DAVID AARON KELLY,
*Appellant.*

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed August 8, 2025. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., BRUNS and BOLTON FLEMING, JJ.

PER CURIAM: David Aaron Kelly challenges the legality of his sentence, arguing the district court imposed that sentence using an incorrect criminal history. Kelly claims that his previous conviction for attempted aggravated intimidation of a witness should have been classified as a nonperson offense, which would have resulted in mandatory drug treatment instead of a prison sentence. But our review of the record and controlling law shows the district court correctly found that attempted aggravated intimidation of a witness is a person crime. We affirm Kelly's sentence.

1

FACTUAL AND PROCEDURAL BACKGROUND

In May 2023, Kelly pleaded guilty to three offenses—possession of a controlled substance, fleeing and eluding a law enforcement officer, and felony criminal damage to property arising from domestic violence—as well as a misdemeanor in a separate case. In exchange, the State dismissed charges in five other cases pending against him.

The State prepared a presentence investigation report to summarize Kelly's previous convictions and determine his presumptive sentence under the Kansas Sentencing Guidelines. The report showed that about a year earlier, Kelly had been convicted of attempted aggravated intimidation of a witness—which the report classified as a person felony—under K.S.A. 21-5301(a) and K.S.A. 21-5909(b)(1). Based in part on this classification, the report determined that Kelly had a criminal-history score of B.

At sentencing, Kelly objected to the inclusion of this conviction, asserting that the conviction had been vacated on appeal in a prior proceeding. The court found this conviction had not been vacated, overruled the objection, and ultimately determined that Kelly's criminal-history score was B.

Kelly asked the court to impose probation and drug-abuse treatment under Senate Bill 123 rather than a prison sentence, arguing that this course of action would better serve both him and the public. The court acknowledged that it had discretion to send Kelly to treatment but denied that request. The court sentenced Kelly to a controlling 46-month prison term, running the sentences for each of Kelly's offenses consecutive.

After sentencing, Kelly filed multiple pro se motions with the district court, seeking to withdraw his pleas and to "vacate [his] illegal sentence," arguing that the court had failed to comply with Senate Bill 123. These motions indicated that Kelly had only accepted the plea agreement because he believed he was entitled to mandatory drug

2

treatment under Senate Bill 123 instead of a prison sentence. Kelly challenged the "wrongful classification of attempted aggravated intimidation," arguing that it should have been treated as an "unclassified" conviction because there is "no such crime of attempted aggravated intimidation of [a] witness level 8 person felony." About a week later, he filed another pro se motion "to challenge PSI and correct PSI criminal history then resentence according to law," claiming that his criminal-history score should have been C.

Kelly's trial counsel also filed a motion to rescore the presentence investigation report, contending the court had misclassified Kelly's conviction for attempted aggravated intimidation of a witness. According to the motion, Kelly had pleaded to that offense under K.S.A. 21-5301 (the statute defining attempt crimes generally), not K.S.A. 21-5909 (which defines intimidation and aggravated intimidation of a witness). The motion argued that because intimidation encompasses both preventing or dissuading a witness from testifying and attempting to do so, someone could read Kelly's plea as admitting to an attempt to *attempt* to commit aggravated intimidation of a witness—a logical impossibility. The motion explained that the parties had "intentionally created [this] nonexistent crime for purposes of plea negotiations," so Kelly's conviction would have a lower severity level and thus a less severe sentence.

This motion also argued that because Kelly's attempted-aggravated-intimidation conviction was a "nonexistent crime," it should have been classified as a nonperson felony for criminal-history purposes. This reclassification would have decreased Kelly's criminal-history score from B to C, eliminating the district court's discretion under Senate Bill 123 and making drug treatment mandatory.

The district court held a hearing on these motions and ultimately found Kelly's illegal-sentence claims unpersuasive. The court observed that Kelly had pleaded guilty to attempted aggravated intimidation of a witness—a crime that exists under Kansas law.

And Kansas law classifies this crime as a person felony for criminal-history purposes. Thus, Kelly's sentence was based on a correct classification. Kelly appeals.

DISCUSSION

The issue on appeal is a narrow one. Kelly does not challenge the validity of his underlying conviction for attempted aggravated intimidation of a witness or the court's classification of that offense as a felony. He argues only that this offense must be treated as a nonperson crime when assessing his criminal history. This argument requires us to interpret and apply the Kansas Sentencing Guidelines—matters over which our review is unlimited. *State v. Samuel*, 309 Kan. 155, 157, 432 P.3d 666 (2019); see *State v. Keel*, 302 Kan. 560, 571-72, 357 P.3d 251 (2015). Like the district court, we do not find Kelly's argument persuasive.

The Guidelines use a combination of a person's criminal history and the severity level of a crime of conviction to determine the presumptive sentencing range for that offense. See K.S.A. 21-6805 (providing sentencing grid for drug crimes). A person's criminal history for sentencing purposes generally includes any previous felony and misdemeanor convictions. See K.S.A. 21-6810(c), (d); K.S.A. 21-6811(e). These convictions are further classified as "person" or "nonperson" crimes, with person crimes resulting in a more severe criminal-history score. See K.S.A. 21-6805.

For over 30 years, the Kansas Legislature has defined Kansas statutory crimes as person or nonperson offenses. See, e.g., K.S.A. 21-5909(c)(2) (defining aggravated intimidation of a witness as a person felony). Criminal attempts to commit person offenses are still classified as person offenses. *State v. Fifer*, 20 Kan. App. 2d 12, 16, 881 P.2d 589 (1994); see K.S.A. 21-5301 (defining attempt crimes generally). But if a defendant enters a plea on a crime not defined by Kansas statutes, those crimes are classified as nonperson offenses for criminal-history purposes. See *State v. Pollman*, 56

4

Kan. App. 2d 1015, 1034, 441 P.3d 511 (2019); see also K.S.A. 21-6810(d)(7) (unclassified crimes scored as nonperson offenses).

K.S.A. 21-5909 outlines the crime of aggravated intimidation of a witness. The statute defines "intimidation" in this context as "preventing or dissuading, or attempting to prevent or dissuade . . . [a]ny witness . . . from attending or giving testimony" at trial. K.S.A. 21-5909(a)(1). That action becomes an aggravated crime if, as in Kelly's case, the intimidation is accomplished through threats of force or violence. K.S.A. 21-5909(b)(1). The Kansas Supreme Court has explained that a person commits this crime when they commit "an act to intimidate the victim"—regardless of whether the witness is actually prevented or dissuaded from testifying. *State v. Aguirre*, 296 Kan. 99, 106-07, 290 P.3d 612 (2012). Put another way, the crime of aggravated intimidation of a witness includes both attempting to persuade someone not to testify and actually preventing someone from testifying.

The general attempt statute, K.S.A. 21-5301(a), defines an attempt as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." Kelly argues that even though he pleaded guilty to attempted aggravated intimidation of a witness under this statute, the resultant crime is actually a logical impossibility. That is, one cannot attempt to *attempt* to prevent someone from testifying.

Kelly does not seek to set aside his earlier plea (which allowed him to be convicted of a severity-level-8 felony under K.S.A. 21-5301[c][1] rather than a severity-level-6 felony under K.S.A. 21-5909[c][2]). But he argues that because he pleaded guilty to a "nonexistent crime," that offense must be scored as a nonperson crime for criminal-history purposes. In doing so, he likens his case to *Pollman*, which found that crimes the legislature had not defined should be treated as nonperson offenses. 56 Kan. App. 2d at 1034.

5

But *Pollman* does not provide the support Kelly seeks. There, the defendant pleaded no contest to discharging a firearm at an *unoccupied* vehicle. Kansas statutes at the time prohibited shooting at an occupied building, at an unoccupied dwelling, or at an *occupied* vehicle. 56 Kan. App. 2d at 1017. The *Pollman* court found the defendant had pleaded to a "nonexistent crime" because the legislature had not defined the acts to which he pleaded as a crime. 56 Kan. App. 2d at 1026.

That is not what happened here. Both aggravated intimidation of a witness and attempt are defined offenses under Kansas law. Thus, Kelly pleaded guilty to conduct—attempting to dissuade a person from testifying through use of force—that the legislature has expressly criminalized and classified as a person offense. The fact that Kelly chose to complicate the legislature's definition by pleading guilty under the general attempt statute to gain a sentencing advantage does not change this reality.

The Kansas Supreme Court recently considered an analogous situation in *State v. Gomez*, 320 Kan. 3, 561 P.3d 908 (2025). There, Gomez challenged his convictions for felony murder and attempted distribution of methamphetamine. Relevant to our discussion here, Gomez challenged the instruction and evidence supporting the attempted-distribution conviction—the predicate felony for his murder conviction. He also claimed that his sentence for the attempted-distribution conviction was illegal. 320 Kan. at 4.

The Supreme Court held that the felony-murder jury instruction was both legally and factually appropriate. 320 Kan. at 22. The court noted that Gomez was charged with and convicted of attempted distribution under the general attempt statute (K.S.A. 21-5301) even though the distribution statute (K.S.A. 21-5705) expressly criminalized both completed and attempted distribution as part of the substantive offense. The court also noted that "the prison sentence for an attempted distribution of a controlled substance

6

under K.S.A. 21-5301(a) is six months lower than the prison sentence for the same conviction under K.S.A. 21-5705(a)(1)." 320 Kan. at 15.

Like Kelly here, Gomez had argued that because the distribution statute already included "attempt" language, it was legally impossible to charge him with this crime under the general attempt statute. 320 Kan. at 12-13. But the *Gomez* court rejected this contention. It held that both K.S.A. 21-5705(a)(1) and K.S.A. 21-5301(a) "clearly and unambiguously criminalize an attempt to distribute methamphetamine," meaning that the crime could be proven under either statute. 320 Kan. at 15. Thus, practically speaking, a person could be guilty of attempted distribution of methamphetamine under the general attempt statute "if the person intended to distribute methamphetamine, made an overt act toward distribution, but failed to complete the distribution." 320 Kan. at 13.

The court ultimately upheld Gomez's conviction for attempted distribution as a "stand-alone crime," and, in turn, found the felony-murder jury instruction—premised on the attempted-distribution charge—both legally and factually appropriate. 320 Kan. at 22.

Applying this same analysis to Kelly's case, the legislature "clearly and unambiguously" decided to criminalize attempting to prevent a person from testifying. 320 Kan. at 15. Thus, a person could be guilty of committing attempted aggravated intimidation of a witness under either K.S.A. 21-5909(b)(1) or K.S.A. 21-5301(a) if they intended to prevent or dissuade a person from testifying, made an overt act to accomplish that intended conduct through the use of force, and the witness nevertheless testified despite these efforts. And the legislature has defined this offense as a person felony. K.S.A. 21-5909(c)(2); see *Fifer*, 20 Kan. App. 2d at 16.

The district court did not err when it classified Kelly's conviction for attempted aggravated intimidation of a witness as a person crime when determining Kelly's criminal history. We affirm his sentence.

Affirmed.