IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,544

STATE OF KANSAS,
*Appellee*,

v.

RANDY D. STURGIS,
*Appellant.*

SYLLABUS BY THE COURT

1.

In reviewing a claim of prosecutorial error, an appellate court must first determine whether the prosecutor's actions fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the court moves to the prejudice step and applies the traditional constitutional harmlessness inquiry demanded by *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), i.e., determines whether the State can show there is no reasonable possibility that the error affected the verdict.

2.

The classification of prior offenses for criminal history purposes involves the interpretation of the revised Kansas Sentencing Guidelines Act; statutory interpretation is a question of law subject to unlimited review.

3.

Prior out-of-state convictions are used in the calculation of a person's criminal history score under the revised Kansas Sentencing Guidelines Act. The State of Kansas

shall classify the out-of-state conviction as a person or nonperson offense by referring to comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed. If the State of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state conviction shall be classified as a nonperson crime.

4.

For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, within the meaning of K.S.A. 2017 Supp. 21-6811(e) (the amended version of K.S.A. 2012 Supp. 21-6811[e]), the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 18, 2015. Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed March 9, 2018. Judgment of the Court of Appeals affirming the district court in part, vacating in part, and remanding with directions is affirmed in part and modified in part. Judgment of the district court is affirmed in part and reversed in part, sentence is vacated, and case is remanded with directions.

*Samuel Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Randy D. Sturgis seeks review of the Court of Appeals' determination that the prosecutorial error in closing argument was harmless and that the district court correctly classified a 2007 Michigan home invasion conviction as a person

2

felony when calculating Sturgis' criminal history score under the revised Kansas Sentencing Guidelines Act (KSGA). *State v. Sturgis*, No. 112,544, 2015 WL 9286956 (Kan. App. 2015) (unpublished opinion). We affirm Sturgis' conviction, but we vacate his sentence and remand for resentencing with a criminal history score that classifies the Michigan home invasion conviction as a nonperson crime.

FACTUAL AND PROCEDURAL OVERVIEW

Sturgis' jury convictions for criminal possession of a firearm and theft were the result of an incident in Derby on January 10, 2013, that appeared to be an armed robbery of a Casey's General Store. At the time, Sturgis was living with his then-girlfriend, Carland "Carly" Ballinger, who worked as a cashier at the convenience store. Sturgis asked Ballinger that morning what she would do if he robbed the Casey's store while she was working, but she thought he was joking.

Later that day, however, Sturgis robbed the store while Ballinger was on duty. Although Sturgis had his face covered with a black bandana, he briefly lowered it to reveal his identity to Ballinger. After Sturgis left with the money Ballinger gave him from the cash register and the safe, Ballinger called 911 to report an armed robbery.

Initially, Ballinger did not tell law enforcement about Sturgis' involvement. About six months later, however, the relationship ended and Ballinger told the police that Sturgis had been the robber. Sturgis countered Ballinger's testimony with an alibi defense, putting on several witnesses to testify that Sturgis had been at a family gathering at his uncle's house in Wichita at the time of the robbery. The jury convicted Sturgis of both offenses.

3

The sentencing court calculated Sturgis' criminal history score as B, based in part on a prior Michigan conviction for third-degree home invasion that the court classified as a person crime. The court imposed a sentence of 18 months' imprisonment.

Sturgis appealed, complaining about several comments by the prosecutor during closing argument and asserting that the district court had erred in classifying his prior conviction in Michigan as a person offense.

With respect to the State's closing argument, the Court of Appeals found that two of the prosecutor's statements were within the bounds of fair argument but that the prosecutor's misstatement of the evidence and the comments on drug use were prosecutorial error. Nevertheless, the panel found those errors to be harmless. *Sturgis*, 2015 WL 9286956, at *10-15.

With respect to the criminal history calculation, the panel determined that the elements of the Michigan offense were broader than Kansas' person felony crime of burglary of a dwelling. But the panel opined that it was "possible that one of the permutations of elements under which a defendant may commit a home invasion in Michigan could match the elements of Kansas burglary," and the district court should have conducted a modified categorical approach to determine which of the statute's alternative elements formed the basis of Sturgis' Michigan conviction. 2015 WL 9286956, at *18.

We granted Sturgis' petition for review.

APPELLANT'S CUSTODIAL STATUS

In a change-of-status letter dated September 8, 2017, the State informed this court that Sturgis had been discharged from supervision by the Kansas Department of

4

Corrections, as of June 24, 2016. The change in status occurred more than a year prior to the notice and about six months prior to the granting of Sturgis' petition for review. Yet, the State has made no argument, supported by authority, as to why any of the issues both parties argue on review might be deemed moot. Accordingly, that issue is not before us at this time. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (issue not briefed deemed abandoned); *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013) (point incidentally raised but not argued deemed abandoned).

PROSECUTORIAL ERROR

Sturgis first asserts that the panel erred in determining that two of the prosecutor's challenged statements were not improper. Then, he argues that the panel erred in finding that the acknowledged prosecutorial error was harmless beyond a reasonable doubt.

*Standard of Review*

Recently, this court revisited the framework for considering claims of prosecutorial misconduct and relabeled that issue as "prosecutorial error." See *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). Appellate courts must first determine whether prosecutorial error has occurred by deciding whether the prosecutor's actions fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the court moves to the prejudice step and applies the traditional constitutional harmlessness inquiry demanded by *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), i.e., whether the State can show there is no reasonable possibility that the error affected the verdict. *Sherman*, 305 Kan. at 109.

*Analysis*

Sturgis first argues that the State impermissibly commented on Sturgis' credibility as a witness when the prosecutor made the following statement:

"The defendant is presumed innocent. He is not presumed credible . . . .

". . . You've heard him. He comes up here and he explains himself. Some other bit of information comes up and he has to come up here again and explain himself. Another bit of information comes up and he has to come up here again and he has an explanation for that as well."

The panel held that the State did not accuse Sturgis of lying; that the statement was not outside the wide latitude afforded prosecutors in crafting arguments in closing; and that prosecutors are allowed to explain to a jury what to look for when assessing credibility. *Sturgis*, 2015 WL 9286956, at *9-10. We agree.

Sturgis' reliance on *State v. Elnicki*, 279 Kan. 47, 62-63, 105 P.3d 1222 (2005), is unpersuasive. There, the prosecutor repeatedly and directly attacked the defendant's credibility with such terms as "'yarn,' 'fairy tale,' 'fabrication,' 'tall tale,' and 'spin.'" 279 Kan. at 62. Here, the prosecutor was pointing out that the jury is entitled to consider that the defendant's version of events evolved as the evidence against him was presented. In short, it was fair comment to point out the inconsistencies and weaknesses in the defendant's testimony.

Next, Sturgis complains that the prosecutor misstated the evidence on two occasions. In the first instance, the prosecutor argued that Sturgis testified that "he never had any contact with Ronald Betts" after "Christmas time of 2012"; whereas, Sturgis' testimony was that he had a falling out with Betts and that "[w]e no longer hung out." Sturgis contends that the prosecutor misstated the evidence because no longer hanging

6

out with someone is different than having no contact with that person. The Court of Appeals refused to split that hair, finding that the prosecutor's comment was a reasonable inference to be drawn from Sturgis' actual words. *Sturgis*, 2015 WL 9286956, at *11. We agree. There was no error here.

The Court of Appeals treated the second claim of misstating the evidence differently. The prosecutor attacked Sturgis' alibi in part by challenging the credibility of his testimony. Specifically, the prosecutor stated that Sturgis testified that he left his uncle's house to go to a Presto gas station for cigarettes, while suggesting that the alibi witnesses referred to the location as a Phillips 66 station. Defense counsel objected on the grounds that the prosecutor had misstated the evidence because the defendant's statement referred to "Presto, Phillips 66." Although there was a bench conference, no ruling on the objection appears in the record, and the prosecutor's closing argument continued with no further reference to that claimed discrepancy.

The Court of Appeals noted that the record reflected Sturgis' testimony on this point to be that he and another person "'went down the street to the Phillips 66 that's located right down the street and got cigarettes.'" *Sturgis*, 2015 WL 9286956, at *12. Consequently, the panel found that the prosecutor had committed misconduct by misstating the evidence. The State did not cross-petition on that holding, perhaps because it would have been futile. Under our current analysis, a prosecutor commits error by misstating the evidence, even when the misstatement is accidental or inadvertent. And, here, the prosecutor clearly misstated Sturgis' testimony. Accordingly, the panel appropriately moved to the second step of harmlessness.

Sturgis claims that the panel failed to appreciate the significance of the misstatement with respect to the State's attack on the defense alibi, thereby diluting *Chapman*'s constitutional harmlessness inquiry. We disagree. The error must be viewed in context. The defense presented several alibi witnesses that supported Sturgis' version

7

of events, i.e., that he was at his uncle's house in Wichita at the time of the robbery in Derby, only leaving the Wichita house for the short time required to run down the street to a convenience store for cigarettes. The jury rejected the testimony of those witnesses, and there is no reasonable possibility that the jury would have embraced the notion that Sturgis was in Wichita at the time of the robbery, if the prosecutor had not misstated how Sturgis identified the down-the-street store in Wichita. That is especially so, given that the jury heard defense counsel's objection identifying the convenience store by both names, Presto and Phillips 66. In short, while the prosecutor's misstatement of the evidence was error, it was not a game-changer.

The final claim of prosecutorial error presents a closer call on harmlessness. The prosecutor asked the jury to consider that Sturgis would hang out at a house identified by a witness as a party house where the witness believed drug use occurred. Specifically, the too clever phrasing of the argument was as follows:

> "Furthermore, Elda Brown considered the Lonely house to be a party house. She stated she believed drug use occurred there. Now, by no means am I saying that the defendant used drugs. By no means am I saying that certain other people used drugs. But that's Elda Brown's impression of where [Sturgis] would go, the people he was hanging around with. Consider that, ladies and gentlemen."

Quoting *State v. Baker*, 281 Kan. 997, 1016, 135 P.3d 1098 (2006), which recited that "[p]rosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or distract the jury from its duty to make decisions based on the evidence and the controlling law," the panel held that the prosecutor's comment was improper. *Sturgis*, 2015 WL 9286956, at *14. Nevertheless, the panel was convinced beyond a reasonable doubt that the comment made no difference in the outcome of the trial, based in part on the fact that the comment was isolated and that the supporting evidence, both direct and circumstantial, outweighed the implications of the comment. 2015 WL 9286956, at *14-15.

Sturgis asserts that the State failed to carry its burden to show that the statement was harmless beyond a reasonable doubt. He argues that the State's case rested principally on the testimony of Ballinger, who admitted to initially lying to the police. In contrast, he claims, the alibi defense was bolstered by the testimony of a number of witnesses. But there was more evidence admitted than the testimony of Ballinger and the alibi witnesses. For instance, a surveillance camera video was admitted, along with the testimony of Derby Police Department Officer Brian Norris as to the matching clothes he observed at Sturgis' residence when investigating a suicide less than a week after the robbery. Officer Norris also related Sturgis' incongruent statements, including questions about the Casey's robbery, during that suicide investigation. There was testimony, albeit subsequently refuted, that a witness saw the robber leave Casey's in a blue Mustang and that Betts, a friend of Sturgis, had a blue Mustang.

Moreover, the defense's own witnesses painted a picture of a party house, involving alcohol consumption, as Sturgis' alibi at the time of the robbery, somewhat mitigating the sting of the prosecutor's party-house comment. On balance, then, we affirm the panel's determination that the prosecutor's comment, standing alone, was harmless.

Finally, Sturgis argues that the cumulative effect of the two prosecutorial errors should tip the scales to reversibility, even if the individual assessment of each error is harmless. Sturgis' point is mildly seductive. The prosecutor's comment implying drug use, even while denying that the State was doing so, certainly scuffs the line of reversibility on these facts. Nevertheless, on balance, we find that the cumulative effect of both errors is insufficient to create a reasonable possibility that the comment would have affected the jury's result. We affirm the panel's finding of harmlessness.

9

Before the Court of Appeals, Sturgis argued that the district court erred in classifying his 2007 Michigan conviction for home invasion in the third degree as a person offense, resulting in a calculated criminal history score of B. The State countered that Sturgis' failure to object to the classification in the district court constituted a stipulation to the facts necessary to effect the classification and that Sturgis was precluded from raising the criminal history classification issue for the first time on appeal. The Court of Appeals held that the State's procedural arguments were refuted by our decision in *State v. Dickey*, 301 Kan. 1018, 1033-34, 350 P.3d 1054 (2015). *Sturgis*, 2015 WL 9286956, at *15. We agree and move directly to the merits.

*Standard of Review*

Classification of prior offenses for criminal history purposes involves interpretation of the KSGA; statutory interpretation is a question of law subject to unlimited review. *State v. Keel*, 302 Kan. 560, 571-72, 357 P.3d 251 (2015).

*Analysis*

In calculating a criminal history score for sentencing on the current crime of conviction, all felony convictions and adjudications and certain misdemeanor convictions and adjudications occurring prior to the current sentencing are considered, including those that occurred in other states. K.S.A. 2012 Supp. 21-6810(a); K.S.A. 2017 Supp. 21-6811(e) (the amended version of K.S.A. 2012 Supp. 21-6811[e]). For out-of-state convictions, Kansas accepts the foreign jurisdiction's designation of its crime as either a felony or misdemeanor, but this state will classify an out-of-state crime as either person or nonperson by referring to comparable offenses under the Kansas criminal code in effect on the date the current crime was committed. See K.S.A. 2017 Supp. 21-6811(e);

10

*Keel*, 302 Kan. at 590 ("Thus, the classification of a prior conviction or juvenile adjudication as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed."). If there is no such comparable Kansas offense, the out-of-state conviction will be scored as a nonperson crime. K.S.A. 2017 Supp. 21-6811(e).

In *State v. Wetrich*, 307 Kan. ___, ___ P.3d ___ (2018) (No. 112,361, this day decided), we construed the meaning of "comparable offense" in K.S.A. 2017 Supp. 21-6811(e)(3), and its ancestors. We held that the analysis requires a comparison of the elements of the out-of-state crime to the elements of the Kansas crime used as the reference offense. If the out-of-state crime does not have elements that are identical to, or narrower than, the Kansas offense to which it is being compared, the out-of-state conviction must be classified as a nonperson offense, as a matter of law. 307 Kan. at ____ (No. 112,361, this day decided), slip op. at 13. In this case, we apply *Wetrich* to resolve Sturgis' claim on the basis of statutory interpretation. Therefore, we need not reach the constitutional issue decided by the Court of Appeals. See *Sturgis*, 2015 WL 9286956 at *17-18.

Here, the Michigan conviction was for a violation of Mich. Comp. Laws § 750.110a(4) (2001), home invasion in the third degree, which could be committed if a person does either of the following:

> "(a) Breaks and enters a dwelling *with intent to commit a misdemeanor* in the dwelling, enters a dwelling without permission *with intent to commit a misdemeanor* in the dwelling, or breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, *commits a misdemeanor.*

11

"(b) Breaks and enters a dwelling or enters a dwelling without permission and, at any time while the person is entering, present in, or exiting the dwelling, *violates* [*an order of protection included as a term of conditional release from custody.*]" (Emphases added.)

The reference crime in Kansas is burglary of a dwelling, K.S.A. 2012 Supp. 21-5807(a)(1), which "is, without authority, entering into or remaining within any: (1) Dwelling, *with intent to commit a felony, theft or sexually motivated crime therein*." (Emphasis added.) While the Michigan crime could be committed by entering a dwelling with an intent to commit a misdemeanor, in Kansas that specific intent would not support our person offense unless the intended misdemeanor was a theft or sexual battery. In other words, the Michigan crime could have been committed with a mental state that would not constitute a burglary in Kansas. See *Mathis v. United States*, 579 U.S. ____, 136 S. Ct. 2243, 2256, 195 L. Ed. 2d 604 (2016) (distinguishing alternative elements and alternative means of proving a single element).

Consequently, the Michigan home invasion conviction was not comparable to the Kansas offense of burglary of a dwelling as it existed when Sturgis committed the crimes in this case. Moreover, the State has not shown us any other offense under the Kansas criminal code that is comparable to the Michigan offense. Accordingly, pursuant to K.S.A. 2017 Supp. 21-6811(e), the Michigan conviction must be scored as a nonperson felony.

Sturgis' convictions are affirmed, his sentence is vacated, and the matter is remanded for resentencing with directions to the district court to classify the prior Michigan conviction for home invasion in the third degree as a nonperson offense.