No. 120,434

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DWAYNE LYNN PATTON,
*Appellant*.

SYLLABUS BY THE COURT

1.

Issues of statutory interpretation raise questions of law over which appellate courts exercise unlimited review.

2.

The crime of driving under the influence under Chapter 8 of the Kansas Statutes Annotated is distinct from crimes governed by the Kansas Sentencing Guidelines Act in Chapter 21 of the Kansas Statutes Annotated. The statute that criminalizes driving under the influence in Chapter 8 should be treated as an essentially self-contained proscriptive and punitive statute.

3.

The plain language of K.S.A. 2018 Supp. 8-1567(j) expressly provides that a comparable out-of-state DUI offense need only prohibit conduct that is similar to the conduct prohibited under K.S.A. 2018 Supp. 8-1567 for purposes of enhancing the sentence for a current DUI conviction in Kansas.

4.

The legislative history of K.S.A. 2018 Supp. 8-1567 reflects the Legislature's intent that prior DUI convictions from Missouri and Oklahoma be considered conduct that is comparable to the conduct prohibited under K.S.A. 2018 Supp. 8-1567 for purposes of enhancing the sentence for a current DUI conviction in Kansas.

5.

In deciding whether a conviction is a first, second, third, fourth, or subsequent conviction for the purposes of enhancing a current DUI sentence, the court must apply the sentencing rule in effect at the time of sentencing—not the rule in effect at the time the offense was committed.

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed September 11, 2020. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., STANDRIDGE and GARDNER, JJ.

STANDRIDGE, J.:  Following a jury trial, Dwayne Lynn Patton was convicted of one count of felony driving under the influence (DUI). At sentencing, the district court found this was Patton's fourth or subsequent DUI conviction and sentenced him to 12 months in jail. Patton appeals, arguing that the prosecutor committed prosecutorial error by misstating the evidence presented at trial in closing arguments and that the district court erred in using two of his prior out-of-state DUI convictions to enhance his sentence in this case. Because the prosecutor did not commit reversible error and because the

2

district court properly included Patton's prior out-of-state DUI convictions in enhancing his sentence, we affirm the jury's verdict and Patton's sentence.

FACTS

At about 9:30 a.m. on January 1, 2016, Master Trooper Steven Morris pulled Patton over for driving 81 miles per hour in a 70 mile-per-hour zone. After initiating contact with Patton, Morris suspected that Patton had been drinking alcohol. Specifically, Morris smelled alcohol coming from Patton's vehicle and observed that Patton's eyes were bloodshot and glazed over. And Patton told Morris that he had been drinking the night before. As a result, Morris initiated a DUI investigation and conducted three standard field sobriety tests: the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test. Before performing the walk-and-turn test, Patton informed Morris that he recently had broken his right foot but that he should be able to perform the test. Nevertheless, Patton failed the tests, and Morris asked him to submit to a preliminary breath test. Patton refused to do so. Morris then arrested Patton and transported him to the Reno County Jail. At the jail, Morris provided Patton with a copy of the implied consent advisory and read it aloud to him. Morris asked Patton to submit to a breathalyzer, and he refused.

On November 22, 2016, the State charged Patton with one count of felony DUI (a fourth or subsequent offense) pursuant to K.S.A. 2015 Supp. 8-1567(a)(3), one count of driving with a suspended license, and one count of speeding. The case proceeded to a jury trial on September 11, 2018. Just before its case-in-chief, the State dismissed the driving while suspended and speeding charges and proceeded only with the DUI charge.

At trial, the State called Master Trooper Morris as its lone witness. Through Morris, the State introduced evidence to support its theory that Patton had been driving under the influence of alcohol to a degree that rendered him incapable of safely driving a

3

vehicle. Specifically, Morris testified that he noticed Patton initially pulled over too close to the fog line such that Morris had to ask Patton to pull over further off the shoulder, Morris smelled alcohol coming from Patton's vehicle, Morris observed that Patton's eyes were bloodshot and glazed over, and Patton told Morris that he had been drinking the night before. Morris only testified about conducting two of the standard field sobriety tests on Patton: the walk-and-turn test and the one-leg stand test. Morris said that while Patton advised he recently had broken his right foot, Morris noticed Patton did not have any issues walking outside of his vehicle, Patton did not limp or use his car to steady himself, and Patton expressly said he was able to complete the tests.

Morris testified that of the eight impairment clues he looks for during the walk-and-turn test, he observed five: Patton started the test before he was instructed to do so, he stopped during the test, he stepped off of the line, he raised his arms to maintain his balance, and he took the wrong number of steps. Morris stated that when two or more clues are present during the walk-and-turn test, there is a likelihood that the subject's blood alcohol content (BAC) is above 0.08. Morris then testified that of the four impairment clues he looks for during the one-leg stand test, he observed three: Patton hopped around, he kept putting his foot down, and he raised his arms to maintain his balance. Again, Morris noted that when two or more clues are present during the one-leg stand test, there is a likelihood that the subject's BAC is above 0.08. Morris also said that he stopped the one-leg stand test because he worried that Patton might hop out into traffic. Morris testified that he could smell alcohol coming from Patton's person while he transported Patton to the Reno County Jail. Morris told the jury that Patton refused to submit to a breathalyzer when they arrived at the jail. Based on his observations, Morris testified that he believed Patton was under the influence of alcohol to a degree that he could not safely operate his vehicle.

On cross-examination, Morris admitted that he only planned on ticketing Patton for speeding because Patton did not exhibit any other unsafe driving signs such as

4

swerving, crossing the lines, or making improper turns. He also said that he could not smell alcohol on Patton when Patton was outside of his vehicle and that other things like allergies can cause bloodshot and watery eyes. When asked by defense counsel, Morris agreed that standard field sobriety test indicators only establish a likelihood—not a certainty—that an individual's BAC is over 0.08.

After the State rested its case-in-chief, Patton moved for dismissal, arguing that the State failed to meet its burden. The district court noted that the State's case was "certainly a weak" one, but it found that the trooper's testimony established a prima facie case sufficient to reach the jury. Patton presented no additional evidence.

During closing arguments, the prosecutor said:

"On New Year's Day, 2016, the defendant had been drinking alcohol. He had been drinking enough alcohol that he smelled like alcohol. He had consumed so much that he could not stand on one foot. He could not even listen and follow instructions and walk in a straight line. He was under the influence to the point that he parked right by the fog line on the road so that the trooper would have to stand in the road in order to talk to him during the traffic stop."

The prosecutor also argued:

"An element of driving under the influence is not that the defendant was actually driving erratically. The standardized field sobriety tests showed that the defendant was under the influence. He lacked coordination, motor skills, and the ability to listen and follow simple instruction. The [S]tate asks that you find the defendant guilty of driving under the influence."

Patton's attorney did not object at any point during the prosecutor's closing remarks. Instead, Patton's attorney focused on discrediting the State's case during her

closing arguments—specifically pointing out how there was no indication Patton was driving unsafely other than his speeding, how he could not complete the field sobriety tests because his injured foot affected his balance, and how the other indicators of intoxication in this case could have been caused by other factors. After the State's rebuttal, the case was submitted to the jury, and the jury later returned a guilty verdict.

A presentence investigation (PSI) report was filed on October 24, 2018. Patton's criminal history worksheet showed seven prior DUI convictions: an April 1987 Kansas conviction, two June 2001 Kansas convictions, a January 2003 Kansas conviction, a January 2003 Oklahoma conviction, a January 2007 Missouri conviction, and an August 2010 Kansas conviction.

Patton's sentencing hearing took place on October 26, 2018. The district court first addressed Patton's posttrial motion for judgment of acquittal. It denied the motion, noting that while it was "a close case," the State presented sufficient evidence to support the guilty verdict. The State then recommended a 12-month jail sentence as this was Patton's fourth or subsequent DUI conviction. Patton's attorney did not object to this characterization. The district court sentenced Patton to 12 months in county jail and ordered him to pay the statutory fine of $2,500 plus any costs of the action.

ANALYSIS

*Prosecutorial error*

Patton claims the prosecutor erred by twice misstating the evidence presented at trial in her closing arguments. We use a two-step process to analyze claims of prosecutorial error. To determine whether error has occurred, we first must decide whether "the act complained of falls outside the wide latitude afforded to prosecutors to conduct the State's case in a way that does not offend the defendant's constitutional right

6

to a fair trial." *State v. Chandler*, 307 Kan. 657, Syl. ¶ 6, 414 P.3d 713 (2018). If error is found, we then must determine whether the error prejudiced the defendant's due process rights to a fair trial. 307 Kan. 657, Syl. ¶ 6. In evaluating this potential prejudice, we use the traditional harmlessness inquiry in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Under this inquiry, prosecutorial error is harmless "if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

In his brief, Patton argues that the prosecutor committed reversible error twice in her closing argument by misstating the evidence presented at trial. The State maintains no error occurred in the first instance and, even if this court were to decide otherwise, the evidence presented at trial was sufficient beyond a reasonable doubt to sustain Patton's guilty verdict. Although Patton did not object to the alleged erroneous statements at trial, appellate courts will review a prosecutorial error claim based on a prosecutor's comments made during closing argument even without a timely objection. *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018).

Kansas courts repeatedly have held that in closing argument, a prosecutor is allowed considerable latitude in discussing the evidence presented at trial and may draw reasonable inferences from that evidence to make its argument to the jury. The prosecutor may not, however, comment on facts that were not presented as evidence. *State v. Hall*, 292 Kan. 841, 848, 257 P.3d 272 (2011). So a prosecutor's arguments must remain consistent with the evidence presented. *State v. Thurber*, 308 Kan. 140, 162, 420 P.3d 389 (2018) (quoting *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 [2016]). If we ultimately determine that a prosecutor has erred in this way, we then must determine

7

whether the State showed there was no reasonable possibility that such errors did not affect the verdict. *State v. Sturgis*, 307 Kan. 565, 568, 412 P.3d 997 (2018).

*Patton had been drinking on New Year's Day 2016.*

Patton first takes issue with the prosecutor's initial remark in closing arguments: "On New Year's Day, 2016, the defendant had been drinking alcohol." Patton asserts the prosecutor's statement conflicts with the evidence presented at trial, which reflected that Patton admitted to drinking the night before. Patton argues this misstatement is significant because it suggested to the jury that Patton had been drinking before 9:30 a.m. on the morning he was pulled over and that he had little to no time to recover from the effects of any alcohol consumption. Patton conceded in rebuttal, however, that the prosecutor correctly told the jury that Patton had admitted to drinking the night before his arrest.

When reviewing a prosecutor's statement for error, an appellate court must consider the prosecutor's statement in the context of the prosecutor's closing arguments. *State v. Brown*, 300 Kan. 542, 560, 331 P.3d 781 (2014); see *State v. Cosby*, 293 Kan. 121, Syl. ¶ 5, 262 P.3d 285 (2011). When considering the prosecutor's closing argument in its entirety here, we find there was no error. The prosecutor opened her closing remarks by stating that on New Year's Day 2016, the defendant *had been* drinking alcohol. This statement implies that at some point before Patton's stop, he had been drinking alcohol. Based on the evidence presented at trial, that was an accurate representation: Patton told the trooper that he drank alcohol the night before. Thus, Patton admitted that he had been drinking at some point before his stop. But even if we were to construe it as a misstatement, the prosecutor later corrected herself and emphasized at two different times throughout her closing remarks and rebuttal that Patton admitted to drinking the night before. Given the entire context of the prosecutor's closing arguments, this statement was not inconsistent with the evidence presented at trial.

8

Because we find no error, there is no need to analyze whether the State met its burden in showing beyond a reasonable doubt that the statement did not affect the jury's verdict.

*The standard field sobriety tests showed Patton was under the influence.*

Patton next argues the prosecutor committed reversible error when she said during her closing remarks that "[t]he standardized field sobriety tests showed that the defendant was under the influence." In support of his argument, Patton asserts the trooper specifically testified at trial that field sobriety testing only establishes a likelihood, not a certainty, that a subject's BAC is equal to or greater than 0.08. Patton claims that this is a significant misstatement because the prosecutor wrongly suggested that the tests proved to a legal certainty that Patton was under the influence of alcohol. Given the fact that the State almost entirely relied on Patton's performance on the field sobriety tests to prove Patton's alleged intoxication, Patton asserts this error was not harmless and that it likely affected the jury's verdict.

But the prosecutor's statement does not conflict with the evidence. The trooper testified that the field sobriety tests showed Patton was impaired. Based on this evidence, the prosecutor told the jury that the field sobriety tests showed that the defendant was "under the influence," which based on common sense is a term that is synonymous with a statement that the defendant was "impaired" or "intoxicated." Contrary to Patton's argument, the prosecutor did not tell the jury that the results of the field sobriety tests showed Patton was *driving* under the influence, *driving* while intoxicated, or *driving* while impaired. In the absence of the word "driving," the prosecutor's statement that Patton was under the influence (or intoxicated or impaired) is a reasonable inference based on the evidence presented about the standard field sobriety tests in this case. Morris' testimony and the video evidence presented showed that Patton failed the walk-and-turn test and one-leg stand test. The testimony and video evidence also showed that Patton had been speeding, that he had pulled over too close to the fog line, that he had

9

bloodshot and glazed over eyes, that Morris smelled alcohol coming from Patton's vehicle, that Patton admitted he had been drinking the night before, that Morris smelled alcohol coming from Patton as he transported Patton to the jail, and that Patton refused to submit to any breath testing. The prosecutor mentioned all of these pieces of evidence in her closing, which was in addition to the evidence showing Patton failed the field sobriety tests. Telling the jury that field sobriety tests showed Patton was under the influence is both consistent with, and supported by, the evidence.

We also find unpersuasive Patton's argument alleging the prosecutor's statement conflicts with the trooper's testimony that field sobriety testing only establishes a likelihood, not a certainty, that a subject's BAC is over 0.08. Patton was charged with operating a vehicle "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle" and not with operating a vehicle with a blood-alcohol level over 0.08. See K.S.A. 2019 Supp. 8-1567(a) (defining "driving under the influence" to include both when the BAC is 0.08 or more and when the driver is under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle). Given the charges lodged against Patton, the prosecutor's statement that the field sobriety tests showed Patton was under the influence is not inconsistent with the trooper's testimony that field sobriety testing only establishes a likelihood, not a certainty, that a subject's BAC is over 0.08.

*Classification of DUI as fourth or subsequent offense*

Although Patton did not object to the district court's classification of him as a fourth or subsequent DUI offender, this court may review his claim for the first time on appeal because misclassification of a prior conviction results in an illegal sentence. See K.S.A. 2019 Supp. 22-3504(a); *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). Classification of a DUI as fourth or subsequent requires interpretation of a statute. Issues of statutory interpretation raise questions of law over which appellate

courts exercise unlimited review. *State v. Gensler*, 308 Kan. 674, 677, 423 P.3d 488 (2018).

Patton claims the district court erred in relying on a 2003 Oklahoma DUI conviction and a 2007 Missouri DUI conviction to enhance the severity level of his current DUI conviction because, on the date he committed his current DUI offense, the elements of those out-of-state DUI statutes were broader than the offense outlined in K.S.A. 2015 Supp. 8-1567(a)(3). By counting prior crimes that have statutory elements broader than those in the Kansas statute, Patton argues the court engaged in the type of judicial fact-finding constitutionally prohibited by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), as applied by our Supreme Court in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018).

The State agrees with Patton that the 2015 version of K.S.A. 8-1567 controls the sentencing issues here. It also agrees that the rule outlined in *Wetrich* controls Patton's sentencing. The *Wetrich* court held that the elements of any out-of-state conviction must be identical to or narrower than a comparable Kansas statute to enhance a current sentence. 307 Kan. at 562. Applying the *Wetrich* rule, the State concedes that Patton's 2007 Missouri DUI conviction should not have been counted to enhance his sentence but argues the 2003 Oklahoma conviction was not broader than K.S.A. 2015 Supp. 8-1567(a) and, therefore, properly was used for enhancement. Alternatively, the State argues that even if the two prior out-of-state DUI convictions should not have been counted, Patton still should be classified as a third-time felony DUI offender under K.S.A. 2015 Supp. 8-1567(b)(1)(D) because he had a prior Kansas DUI conviction that occurred within the preceding 10 years. The maximum penalty for a third-time felony DUI offender, the State notes, is the same sentence that was imposed on Patton here.

We begin our analysis by noting that Patton and the State have applied the wrong version of K.S.A. 8-1567 to support their positions on the issue of whether Patton's two

11

prior out-of-state DUI convictions can be used to enhance his current DUI conviction. To understand the parties' error, we find it helpful to provide a brief chronology of the case as well as the statutory and caselaw developments impacting the calculation here.

11-22-2016: Patton was charged with DUI.

03-09-2018: The Kansas Supreme Court handed down its decision in *Wetrich*.

07-01-2018: Statutory amendments to K.S.A. 8-1567(i) and (j) became effective.

09-11-2018: Patton's trial began.

10-26-2018: Patton was sentenced.

Both parties assert that this court should apply the provisions in K.S.A. 2015 Supp. 8-1567(i), which was in effect at the time Patton committed the DUI offense in 2016. K.S.A. 2015 Supp. 8-1567(i) provides in relevant part:

"(i) For the purpose of determining whether a conviction is a first, second, third, fourth or subsequent conviction in sentencing under this section:

(1) Convictions for a violation of this section, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that this section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, shall be taken into account, but only convictions or diversions occurring on or after July 1, 2001.

. . . .

(3) 'conviction' includes: . . . (B) conviction of a violation of . . . any law of another state which would constitute a crime described in subsection (i)(1) or (i)(2)."

Twenty-six months after Patton committed his current DUI offense but months before his trial and sentencing hearing, the Kansas Supreme Court decided *Wetrich*. The issue for decision in *Wetrich* was how the defendant's prior Missouri conviction should be scored in determining his criminal history under Chapter 21, which contains the Kansas Sentencing Guidelines Act (KSGA) of the Kansas Criminal Code. 307 Kan. at

12

555-64. This issue turned on the term "comparable" as used in K.S.A. 2017 Supp. 21-6811(e)(2)(A) and (3). 307 Kan. at 559-62. Under these two subsections, an out-of-state felony conviction should be classified as a person felony if the comparable Kansas crime were designated a person offense. If there were no comparable Kansas crime, the out-of-state felony conviction should be classified as a nonperson felony. 307 Kan. at 559.

After implicitly deeming the term comparable to be ambiguous language, the *Wetrich* court relied on legislative history to establish a standard for deciding whether an out-of-state criminal conviction is comparable to a Kansas crime in calculating criminal history in Chapter 21 cases. Specifically, the *Wetrich* court held that an out-of-state conviction is comparable to an offense under Chapter 21 if the elements of the out-of-state crime are identical to or narrower than the elements of the Kansas crime that is referenced. 307 Kan. at 560-62.

In the wake of *Wetrich*, there appeared to be some confusion about whether the *Wetrich* rule announced in the context of the KSGA under Chapter 21 applied in DUI cases under Chapter 8. This confusion stemmed in part from the fact that the term comparable did not appear in K.S.A. 2018 Supp. 8-1567(i). Adding to the confusion was the fact that—four years before it issued the *Wetrich* opinion—the Kansas Supreme Court held that driving under the influence under Chapter 8 is a crime distinct from crimes governed by the KSGA in Chapter 21 and should be treated as an essentially self-contained proscriptive and punitive statute. *State v. Reese*, 300 Kan. 650, 654, 333 P.3d 149 (2014) ("Kansas' DUI law is a self-contained criminal statute, which means that all essential components of the crime, including the elements, severity levels, and applicable sentences, are included within the statute."). Because the Kansas DUI law provides its own sentencing provisions, the *Reese* court found cases relating to the proper application of the KSGA are of minimal precedential value in DUI cases. 300 Kan. at 654. A panel of this court recently reinforced this principle. See *State v. Mejia*, 58 Kan. App. 2d 229, 232, 466 P.3d 1217 (2020) ("By its own pronouncement, . . . the Kansas Supreme Court

13

should not construe *Wetrich* to be controlling authority for K.S.A. 8-1567 and ought to treat it as advisory guidance to the extent it might be analogous."), *petition for rev. filed* June 29, 2020.

About four months after *Wetrich* was decided, the Kansas Legislature amended K.S.A. 8-1567(i) and (j), which provides in relevant part:

"(i) For the purpose of determining whether a conviction is a first, second, third, fourth or subsequent conviction in sentencing under this section:

(1) Convictions for a violation of this section, or a violation of an ordinance of any city or resolution of any county that prohibits the acts that this section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, shall be taken into account, but only convictions or diversions occurring on or after July 1, 2001.

. . . .

(3) 'conviction' includes: . . . (B) conviction of a violation of an ordinance of a city in this state, a resolution of a county in this state or any law of another jurisdiction that would constitute an offense that is comparable to the offense described in subsection (i)(1) or (i)(2) . . . .

"(j) For the purposes of determining whether an offense is comparable, the following shall be considered:

(1) The name of the out-of-jurisdiction offense;

(2) the elements of the out-of-jurisdiction offense; and

(3) whether the out-of-jurisdiction offense prohibits similar conduct to the conduct prohibited by the closest approximate Kansas offense." K.S.A. 2019 Supp. 8-1567(i) and (j).

This amendment went into effect on July 1, 2018, which was after Patton committed the current DUI offense but before his trial and sentencing hearing. The plain language in the amendment to K.S.A. 8-1567 reflects the Legislature's intent to disregard the *Wetrich* "identical or narrower" rule used in Chapter 21 when it comes to DUIs. "The amendment, in that sense, clarified the meaning of the existing statutory language rather than changing

it, reflecting a legislative effort to inoculate K.S.A. 8-1567 against any argument that *Wetrich* should govern by analogy." *Mejia*, 58 Kan. App. 2d at 238.

But even if we were to find the amended language ambiguous, the legislative history reflects the Legislature's underlying intent in enacting the amended statute. The explanatory introduction to the bill that eventually became K.S.A. 2018 Supp. 8-1567(i) and (j) is instructive:

> "WHEREAS, The Legislature intends that the provisions of this act related to comparability of an out-of-jurisdiction offense to a Kansas offense shall be liberally construed to allow comparable offenses, regardless of whether the elements are identical to or narrower than the corresponding Kansas offense, to be included in a person's criminal history; and
> "WHEREAS, The Legislature intends to promote the inclusion of convictions for such offenses in a person's criminal history, including, but not limited to, any violation of: . . . *Missouri, V.A.M.S. § 577.010 or V.A.M.S. § 577.012* [*and*] *Oklahoma, 47 Okl. St. Ann. § 11-902*." (Emphasis added.) L. 2018, ch. 106, Preamble.

Particularly relevant to the facts presented in this case, the preamble makes clear that the Legislature intended to include both the Missouri and Oklahoma DUI statutes as comparable offenses for the purposes of enhancing a defendant's current DUI sentence. See *Mejia*, 58 Kan. App. 2d at 238; L. 2018, ch. 106, Preamble.

Having provided the statutory and caselaw developments relevant to deciding whether Patton's two prior out-of-state DUI convictions can be used to enhance his current DUI conviction, we reiterate our earlier conclusion that Patton and the State have applied the wrong version of K.S.A. 8-1567 to support their positions. The parties assert the *Wetrich* rule applies because K.S.A. 2015 Supp. 8-1567(i) was the rule that was in effect at the time Patton committed the DUI offense. But as the Kansas Supreme Court ruled in *Reese*, deciding whether a conviction is a first, second, third, fourth, or

15

subsequent conviction for the purposes of enhancing a current DUI sentence is a determination that must be made *at the time of sentencing*. 300 Kan. at 657. So when the court enhances a current DUI sentence under K.S.A. 8-1567(i), it must apply the sentencing rule that is in effect at the time of sentencing—not the rule in effect at the time the offense was committed. 300 Kan. at 657. For this reason, the 2018 amendment to K.S.A. 8-1567(i) and (j)—and not the rule set forth in *Wetrich*—applies in this case because the amendment became effective on July 1, 2018—almost four months before Patton was sentenced.

Applying K.S.A. 2018 Supp. 8-1567(i) and (j) as required by *Reese*, we conclude the district court did not err in sentencing Patton as a fourth or subsequent DUI offender. There are four prior DUI convictions that are relevant to this appeal: Patton's January 2003 Kansas conviction, his January 2003 Oklahoma conviction, his January 2007 Missouri conviction, and his August 2010 Kansas conviction. See K.S.A. 2018 Supp. 8-1567(i)(1) (providing that only DUI convictions or diversions occurring on or after July 1, 2001, are relevant to determining whether defendant is a first, second, third, fourth, or subsequent DUI offender for purposes of enhancing current DUI sentence). Patton concedes that his January 2003 Kansas conviction was properly included in the calculation to enhance his sentence. He challenges the use of both his two prior out-of-state DUI convictions. Patton's 2003 Oklahoma conviction was based on 47 Okla. Stat. tit. 47, § 11-902, and his 2007 Missouri conviction was based on Mo. Rev. Stat. § 577.010. Interestingly, Patton makes no mention of the August 2010 Kansas conviction, the State does not argue that the conviction should be used to enhance his sentence, and the PSI report did not score the conviction so as to enhance Patton's current DUI conviction. But even without considering the August 2010 Kansas DUI conviction, there are three prior DUI convictions for purposes of classifying Patton as a fourth-time DUI offender.

The plain language of K.S.A. 2018 Supp. 8-1567(j) expressly provides that a comparable out-of-state DUI offense need only prohibit conduct that is *similar* to the conduct prohibited under K.S.A. 8-1567. Based on this unambiguous language and the legislative history that specifically includes 47 Okla. Stat. tit. 47, § 11-902 and Mo. Rev. Stat. § 577.010 under the umbrella of similar conduct, the district court properly included these two offenses for purposes of enhancing Patton's current DUI sentence. Finding no error by the court in sentencing Patton as a fourth or subsequent offender, we affirm his sentence.

Affirmed.